IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DERK M. ROGERS,             :
                            :
      Petitioner,           :
                            :
v.                          :   Civ. Act. No. 04-1348-GMS
                            :
                            :
THOMAS L. CARROLL, Warden,  :
                            :
      Respondent.           :

**REPLY**

FILED
JUN - 6 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Pursuant To Rule 5(e) of the Rules Governing Section 2254 Action, 28 U.S.C. foll. § Petition states the following in reply to the respondent's answer to the petitioner's application for writ of habeas corpus:

1. INEFFECTIVE ASSISTANCE OF COUNSEL

Trial Counsel violated Delaware lawyers Rules of professional conduct of conduct which gave a prejudicial Rule to Defendants Right under 5TH AND 14TH Amendant. State Court Reslted in a decsion that was Base on an unreqsonable determination of the facts in light of the evidence presented in the state court proceeding.

2. Insufficient Evidence

Trial Court lack Authority to convict and punish base on every element of crime dont being proven beyond a reasonable doubt which also brought a lack of evidence to link defendant to crime Resulted in a decsion that was base on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

3. Prosectorial Misconduct

Prosection knew the lack of evidence under due process and the inconsistent statement of Helen Johnson when first taken but over looked that future statement showed incorrect truth from beginning which prejudice defendant. Resulted in decsion that was contary to or involed an unreasonble application of clearly established federal law, As determined by the Supreme Court of the United States.

Page. 90

✱ 2. Right Now what do you recall what happened 3. on December 19 of 2001? 4. "me and Derek realized --- we was out front 5. Talking for a minute and I gave him Two dollars. he 6. went in there to get a half a pint. we went on the 7. Side of the Building further up. we drunk the half a 8. pint

✱ page. 47 Statement / Helen Johnson

21. When you arrived at The Store on 22. December 19TH was anybody else already There?

✱ page. 48. 1. Who was already There?
2. Calvin Harris was Sitting in The Chair by The Window.

✱ page. 52. 16. Where was Calvin Sitting?
17. Sitting in the Chair and he reach across. 18. where Calvin was sitting 5 give me the money and I. 19. handed him The Gin.

✱ page. 2 I Think he was There when fess Came in to buy The half of pint.

Statement / Helen Johnson
Case No. 30·01 127 406
page. 2

# A.9 And he bought a half a pint. He and Andre Berry went out with it.

Q 10. Okay so it was he and Andre Barry that came in the store together?

A.10 No Andre was outside waiting. He came in to buy the half a pint and they went out cause I saw them walk around towards Vandever Avenue together

A.14, I think he was there when fess came in to buy the half a pint.

Statement / Helen Johnson
Case No 30.01 127 406
page. 16

# A. 145 I don't even know if any customers that I had during that time to tell you the truth. Other than fess bought a half a pint

# Q.146 Okay

A.146 And him and Andre ran around the conner and drank it some place that they went up that's on locust street side.

Statement / Helen Johnson
Case No. 30 01 127 406
page -13

Q.114 So when fess came in the store, Andre was with him to buy alcohol?

3)

⓵ In Addition, Det. Brock stated a search warrant was conducted at the Defendant's Residence which did not yield any evidence relative to the crime. (A-84).

② Det. Brock also stated he interviewed Five to eight (5-8) individuals in connection with the shooting and two to three (2-3), saw the shooter leaving the store. (A-86). No witness decribed the person leaving the store as wearing a tan Jacket as stated by Johnson. (A-87)

⓷ Brown testified that Rogers was with him on the morning of the shooting cleaning out a garage. (A-121).

⓸ Det. Brock was then recalled to testify by the defense. Det Brock stated that Although Johnson desribed the shotgun that shot her as rusty. The Police still seized from Berry and sent for testing a rifle that was in new condition. (A-145). The ATF test report that was performed on the Berry rifle seized came back as inconclusive as to whether it was used in the shooting or not. (A-146).

Statment / Helen Johnson
  Case No. 30-01-127406
  page. 10

Q-76, Now what was Jess wearing was he besides the mask? what kind of clothes? 

A-76, He had a tan knit cap on and he had a tan Jacket.

Helen Johnson - Cross
page 99  A-22 It was not a knit cap
        Q-23 what did you see?

page-100  1. It was Black, Shiny material and had a light
          2. border around it, and it had slits made in it
          and you 3. could see his eyes.

page-52  Helen Johnson Direct
         Case No. 30-01-127406

Q-101 To the Best, To the very Best that you can Remember he had on a tan Jacket?

A-101 I Think it was a tan Jacket and I'm Thinking the little knit hat was tan or Black I dont Remember I think it was tan. The Public Defender should objected. She dont know what the person had on.

## Statement of Helen Johnson

page-56
1. and he went out the door and went towards Locust
2. Street.

page-59 you said you could see nothing but colors. - 3, to 8
13 to 21, you said you screamed and screamed and walking towards him, he kept backing up to he got by the door then he bolted out and ran out the door.

page-11 you said after he fired the shot, he turned around ran out the door.

page-21
55,56
I dont know where he ran to or when he went out the store, I dont know which way he went.

↳ you said you started screaming and screaming and looking him in is face and he was backing up all this time and he went out the door towards Locust Street.

(Again the Public Defender should of object.

page-5
and stood right there in front of him and just looked him in his face and screamed just as loud and hard as long as I could.

5)

※ On cross examination, Phillip Johnson admitted that he had no prior problems with Rogers at the store or personally. (A-107). There after, the stat rested.

※ The defense presented several witnesses in it's case in chief. Michael Murray (hereafter referred to as "Murray") testified that on the day of the shooting he was at the bus stop across from the liquor store. (A-109). He saw an individual walking toward the liquor store wearing dark clothing, baggy jeans, a mask and a hoody. (A-109). Thereafter, the person entered the liquor store, a shot rang out and the individual came out of the store. (A-109). Murray stated he initially told the police he didn't see anything because he was fearful and lived nearby. However he later went down to the police station and gave a statment consistent with his testimony in court. (A 110).

※ The next defense witness, Michael Simonds (herein after) referred to as "Simonds") worked at the Thomas Edison Charter School as a vice principal on the day of the shooting. (A-112). Simonds saw an individual in all black clothing running up the street after the shooting (A-113).

※ Detective Cresto - took various pictures and (A
Fingerprints from the Crime Scene However, No Evidence
that was retrieved could link Mr. Rogers to the Cri

※ Detective Brock Also Testified for the prosecution A
Search warrant was conducted at the defendant Reside
which did not yield any evidence relative to the crime
(A-8

※ Detective Cresto Redirect
Q. You also processed - is it cyanocrylate
A. Cyanoacrylate
Q. for latent points on the shotgun shell and the pen on the floor?
A- yes
Q what were the results from those test?
A. Negative
Q Do you have any knowledge that linked Mr. Rogers to this Crime?
A. No I dont

※ Page-4
As a Result of the Shooting, Johnson was taken to
the Hospital, A-43). She spoke with a Detective Brock
and Identified the Defendant as the person who
shot her (A 43).

※ On Cross Examination Johnson stated that when she
spoke with Det. Brock at the Hospital she was on
Numerous medications Including morphine (A-47).
Dr. Giannoukos Confirmed that Johnson Received several
doses of liquid morphine. And acknowledged that it can
have more side Affects on the Aged than Younger

IN Addition, Dr. Giannoukos stated that the side effects of liquid morphine include hallucinations and vivid dreams. (A-67)

※ page.6. Det. Brock also stated he interviewed five to eight (5-8) individuals in connection with the shooting and two to three (2-3) saw the shooter leaving the store. (A.86). No witness described the person leaving the store as wearing a tan jacket as stated by Johnson. (A.87). The witness all stated that the shooter had a dark colored jacket and dark hooded sweatshirt. (A.87).

※ page-8. Michael Murray testified that on the day of the shooting he was at the bus stop across from the liquor store. (A-109). he saw an individual walking towards the liquor store wearing dark clothing, baggy jeans, a mask and a hoody. (A-109). Thereafter, the person entered the liquor, a shot rang out and individual came out of the store. (A.109); he later went down to the police station and gave a statement consistent with his testimony in court. (A-110).

※ page-8. The next defense witness, Michael Simonds, (hereinafter referred to as Simonds) worked at the Thomas Edison Charter school as a vice principal on the day of the shooting (A-112). Simonds saw an indiviual in all dark clothing running up the street after the shooting (A.113).

※ page.9 Brown testified that Robers was with him on the morning of the shooting cleaning out a garage. (A.121).

※ page. 51 Detective Brock. Redirect
7.Q Early but my question to you sir is you & have no information in your investigation that links that ShoNer to mr Robers is that correct? 10. That's correct

A-114. Andre was there I don't know cause he was sitting there in the chair before Calvin came in

Andre Berry
page, 84

Having first been duly sworn on oath was examined and testified as follows:

page, 90

20. Q. Do you recall telling Officer Brock that you bought the Gin Gilby's Gin from Philip Johnson do you recall telling him that

page 90
23. A. Yeah, because I buy Gilby's But Derek went in and came out with Crystal Palace.

page 91 But you don't recall telling Detective Brock. 3. That you stated that you bought Gilbys Gin from 4. Philip Johnson at 9:15 in the morning that Helen 5. Johnson was shot not every word. 7. And you don't recall telling Detective Brock 8. That you didn't see the defendant that day, you don't 9. recall the
13. No, because I did see the defendant.

page, 194 18. And did he say if he saw Fess or Derek 19. Rogers on the day of the shooting?
20. He said he did not see him.

6)

* Jeffrey Cunningham (here in after referred to as Cunningham) testified he lived with the defendant at 822 E. 17 Street in Wilmington, Delaware (A-115). Cunningham stated he never saw Rogers with a weapon or wear dark hooded jackets or baggy jeans. (A-115). On the day of the shooting, the defendant did not act unusual or out of the ordinary. (A-115).

* Andre Berry (here in after referred to as Berry) In addition, he stated he was with the defendant Derek Rogers in the morning Johnson was shot, buying alcohol. (A-119).

* Calvin Harris, here in after referred to as Harris) testified that on the day of the shooting he was in the liquor store. (A-127) An audio tape was played which related to a statement Harris gave to police immediately after the shooting. (A-128). At no time in the tape does Harris identify the defendant as the shooter even though he has known the defendant for several years.

United States District Court
District of Delaware
844 King Street
Lock Box 18
Wilmington, DE 19801

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DERK M. ROGERS, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 04-1348-GMS |
| | : | |
| THOMAS L. CARROLL, Warden, | : | |
| | : | |
| Respondent. | : | |

### REPLY

Pursuant To Rule 5(e) of the Rules Governing Section 2254 Action, 28 U.S.C. foll. § Petition states the following in reply to the respondent's answer to the petitioner's application for writ of habeas corpus:

page - 163

19. Mr O'CONNOR, to make sure that one thing 20. isn't mentioned, the defendant was given a polygraph 21. I'm leaving that out and he should be instructed not 22. to mention that. 23. Mr. WEBB: He knows that in very forceful

page 164. terms. DEFENDANT. I was not giving a polygraph test the corrections officer as would I take one I said yes. he said I have to call my friend he going to take it. It never happen I'm gettin ready to take the stand Mr. O'CONNor came over and told mr Webb my public defender told me not to. Matter a fact he told me not to say any thing at all. The hole time we were in court he will handle every thing.

I/M DEREK M. Rollers
SBI# 190986 UNIT C-C-L-8
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

WILMINGTON, DE 19850
JUN 2 2005

United States District Court
844 King Street
Lock Box 18
Wilmington, Delaware
19901

